# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| ANTOINETTE L. MOUSTAFI, | Case No. 4-07-00407-EWH |
| Debtor. | **MEMORANDUM DECISION** |

## I. INTRODUCTION

The Debtor complied with the requirements of the Bankruptcy Code by timely filing her statement of intention and timely entering into a reaffirmation agreement with the credit union that holds a security interest in her car. That reaffirmation agreement will not, however, be approved because the Debtor's net monthly income is less than her expenses and because the car is worth less than what she owes on it. Despite the changes made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), a debtor may still, under certain limited circumstances, retain a car even without a court approved reaffirmation agreement. This is such a case.

## II. FACTUAL AND PROCEDURAL HISTORY

Antoinette Moustafi ("Debtor"), a single parent of two children, filed a pro se Chapter 7 petition on March 16, 2007. On March 20, 2007, she filed her individual

statement of intention ("Statement") using Official Form 8. On the Statement, she checked the reaffirmation column for a 2005 Nissan Frontier ("Nissan"), indicating that she intended to reaffirm the debt. The Statement lists Vantage West Credit Union ("Vantage") as holding a security interest in the Nissan. Schedule D lists the amount of Vantage's claim as $27,011 and, of that amount, $11,911 is reported as unsecured.

On April 19, 2007, the Debtor executed a reaffirmation agreement for the Nissan ("Reaffirmation Agreement"), which was accepted by Vantage's representative on April 20, 2007. On that same day, the Reaffirmation Agreement was filed with the court. The Debtor's first meeting of creditors was held on May 8, 2007.

Under the Reaffirmation Agreement, the Debtor agreed to reaffirm her debt to Vantage under the original terms of the attached "Motor Vehicle Retail Installment Sales Contract and Purchase Money Security Agreement" (Vantage Security Agreement), dated June 10, 2006. The Reaffirmation Agreement indicates that the outstanding loan balance is $26,304; the amount of the monthly payment is $519; and the interest rate is 8.25%. Also attached to the Reaffirmation Agreement is a Kelly Blue Book valuation which sets the "total wholesale/retail value" of the Nissan as between $19,475 and $23,480.

The Debtor's Statement in support of the Reaffirmation Agreement (Part D) was filed in, indicating that she has a monthly income of $2,000 and no expenses, "leaving $520" to make the car payment. However, Debtor's Schedules I and J indicate that her

monthly net income, after deducting the $520 car payment and other monthly expenses, is a negative $179.[1]

On May 15, 2007, the court held a hearing on approval of the Reaffirmation Agreement. The Debtor appeared and participated in the court's "friend of the court" reaffirmation program in which attorneys volunteer to review reaffirmation agreements with pro se debtors. The volunteer attorneys make recommendations to the court on whether approval of a proposed reaffirmation agreement is in a debtor's best interest. At the hearing, the friend of the court stated that he did not think the Reaffirmation Agreement was in the Debtor's best interest, but that the Debtor wanted to go forward with it, apparently believing if the Reaffirmation Agreement was not approved, Vantage would repossess the Nissan.

Counsel for Vantage was present at the hearing. He reported that Vantage had valued the car at about $21,000, and that Vantage was unwilling to modify the terms of the original contract. Counsel's statements supported the notion that Vantage would repossess the car if the Reaffirmation Agreement was not approved, noting that the

---

[1] According to Interim Rule 4008, the amounts listed by a debtor in Part D of a reaffirmation agreement should be the same as what is shown on Schedules I and J. If there is a difference, there should be an accompanying statement explaining the difference. There was no accompanying statement explaining why the expenses in Part D of the Reaffirmation Agreement were different than on Schedule J. Moreover, it is apparent that the Debtor misunderstood Part D because no one has zero expenses. Accordingly, the court relied on the Debtor's Schedules I and J for income and expenses in determining whether approval of the Reaffirmation Agreement was in the Debtor's best interest.

3

Debtor would likely have to pay a much higher interest rate to obtain another car.[2] At the conclusion of the hearing, the matter was taken under advisement. It is now ready for decision.

## III. ISSUES TO BE DECIDED

1. Is approval of the Reaffirmation Agreement in the Debtor's best interest?

2. If the Reaffirmation Agreement is not approved, may Vantage repossess the Nissan before or after the Debtor's discharge?

## IV. JURISDICTIONAL STATEMENT

Jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(b)(2).

## V. DISCUSSION

Prior to enactment of BAPCPA, Chapter 7 debtors in the Ninth Circuit, who were current on their payment and insurance obligations, could retain their cars without entering into reaffirmation agreements. The so-called "ride-through" or "retain and pay" option was approved by the Ninth Circuit in <u>McClellan Fed. Credit Union v. Parker (In re Parker)</u>, 139 F.3d 668, 673 (9th Cir. 1998). <u>Parker</u> held that redemption or reaffirmation were not the only alternatives available to a debtor under 11 U.S.C. § 521(2)(A).[3]

---

[2] Vantage's Security Agreement makes the commencement of any bankruptcy an event of default (¶ 8) and authorizes Vantage, in the event of a default, to repossess its collateral (¶ 10).

[3] BAPCPA redesignated § 521(2) as § 521(a)(2), so that § 521(2)(A) is now § 521(a)(2)(A). BAPCPA did not change the language of subparagraph (A), which provides:

4

> [T]he only mandatory act is the filing of the statement of intention, which the debtor "shall" file. Then, "if applicable," – that is, if the debtor plans to choose any of the three options listed later in the statute (claiming the property as exempt, redeeming the property, or reaffirming the debt) – the debtor must so specify in the statement of intention. The debtor's other options remain available, as unambiguously stated in § 521(2)(C): "[N]othing in subparagraph [ ] (A) . . . shall alter the debtor's or the trustee's rights with regard to such property under this title." [4]

Id. at 673. The ride-through option "allowed a debtor to keep the collateral as long as he or she maintained timely payments to the secured creditor, and also provided a debtor with the benefit of the discharge as to any unsecured liability." In re Steinhaus, 349 B.R. 694, 700 (Bankr. D. Idaho 2006).

A.  BAPCPA's Changes to Section 521

While BAPCPA did not alter the language of subparagraph (A) of § 521(2) (now § 521(a)(2)), other changes were made to § 521. Section 521(a)(2) now applies to all secured debts, not just secured consumer debts. See In re Root, 2006 WL 1050687, at *3 (Bankr. N.D. Iowa April 11, 2006) (BAPCPA amended § 521(a)(2) by deleting the term "consumer" as a modifier of "debts"). Section 521(a)(2)(B) changes the time by which a debtor "shall perform" the intention elected in the statement of intention from 45 days from the filing of the statement to "within 30 days after the first date set for the meeting of creditors."

---

> within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

[4] BAPCPA redesignated § 521(2)(C) as § 521(a)(2)(C) and added the following language to the end of the subsection: "except as provided in Section 362(h)."

5

BAPCPA added language to subparagraph (C) (now § 521(a)(2)(C)), which makes a debtor's (and a trustee's) rights in personal property subject to § 362(h). Section 362(h)(1) terminates the automatic stay and removes personal property from the estate if a debtor fails to: (1) file a statement of intention by the earlier of 30 days from the petition date or the date of the first meeting of creditors[5] and/or (2) fails to take the actions specified in the statement of intention within 30 days of the first date set for the meeting of creditors.[6] The deadline for a debtor to perform the statement of intention does not apply if: (1) the statement "specifies" the debtor's intention to reaffirm the debt "on the original contract terms"; and (2) the creditor refuses to reaffirm the debt on its original terms.[7]

BAPCPA also added a subparagraph to § 521. Under new subparagraph (d), a debtor's failure to timely perform the actions required by § 362(h)(1) and (2) permits a creditor who holds a prepetition security interest in personal property to enforce any provision in its security agreement which makes the filing of a bankruptcy case an event of default ("ipso facto" clause).

Section 521(d) also makes ipso facto clauses enforceable if a debtor fails to comply with § 521(a)(6) of the Code. Section 521(a)(6) applies to personal property "as to which a creditor has an allowed claim for the purchase price secured in whole or in part by" personal property. Where § 521(a)(6) applies, it requires the debtor to either

---

[5] Section 362(h)(1)(A).

[6] Section 362(h)(1)(B).

[7] Id. The "reaffirmation column" on Official Form 8 does not provide the option for a debtor to "specify" the intention to reaffirm the debt on the original contract terms. Form 8's reaffirmation choice merely provides that the "debt will be reaffirmed pursuant to 11 U.S.C. § 524(c)."

6

enter into a reaffirmation agreement or redeem the personal property pursuant to § 722.[8] The consequences for a debtor who does not reaffirm or redeem are similar to those set out in § 362(h) -- the stay lifts, the property ceases to be property of the estate, and the creditor is permitted to take whatever action is permitted under non-bankruptcy law.

In this case, because Vantage has not filed a proof of claim, it does not have an "allowed" claim. Therefore, § 521(a)(6) does not apply. See In re Donald, 343 B.R. 524, 535 (Bankr. E.D. N.C. 2006). Furthermore, it is unclear if a creditor will ever have an allowed claim for the purchase price -- even if a proof of claim is filed -- because a creditor's claim on the petition date will rarely equal the purchase price of the collateral. Id. at 536-37 (a claim for the purchase price indicates a claim for the full purchase price); see also In re Hinson, 352 B.R. 48, 51-52 (Bankr. E.D. N.C. 2006).

B.  The Role of the Court in the Reaffirmation Process

Section 524(c)(6) requires court review of reaffirmation agreements for debts secured by personal property where debtors are not represented by attorneys in the negotiation of the reaffirmation agreement. Such agreements are only effective if approved by the court as not imposing an undue hardship on the unrepresented debtor or her dependents and as being in the debtor's best interest.[9]

In this case, the Reaffirmation Agreement is not in the best interest of the Debtor because her expenses, including her car payment, exceed her income and because the

---

[8] §§ 521(a)(6)(A), (B).

[9] §§ 524(c)(6)(A)(i) and (ii).

7

debt is greater than the value of the Nissan. Accordingly, the Reaffirmation Agreement will not be approved.

C. The Impact of Disapproval fo the Reaffirmation Agreement

If disapproval of the Reaffirmation Agreement means that the Debtor has failed to perform her intention as required by § 521(a)(2)(B), then § 521(d) would apply, permitting Vantage to enforce its ipso facto clause. Post-discharge, Vantage would be able to repossess the Nissan because the Debtor's bankruptcy filing is an event of default under the Vantage Security Agreement.

In In re Husain, 2007 WL 709302 (Bankr. E.D. Va. March 5, 2007), the court addressed this issue and found:

> The Debtors' timely act of entering into mutually satisfactory reaffirmation Agreements with their creditors must be viewed as sufficient to satisfy the performance standards of § 521(a). Those performance requirements should not be read as a mandate for debtors to entirely consummate their stated intentions. . . . Section 521(a) of the Bankruptcy Code merely requires the debtor to "take steps to act on an intention to either retain or surrender.". . . . The Debtors in the case at bar did everything in their capacity to perform.

2007 WL 709302, at *5 (citations omitted in text). This court agrees. The consequences of § 362(h)(1) and § 521(d) -- lifting the automatic stay and making ipso facto default clauses enforceable -- are only caused by a debtor's failure to timely file a statement of intention and/or to timely enter into a reaffirmation agreement, "not by the court's disapproval of the agreement or by its determination that the agreement is unenforceable." Id.; see also In re Blakeley, 2007 WL 674712, at *6 (Bankr. D. Utah Jan. 17, 2007) ("It is not necessary for the Court to approve the reaffirmation agreement in order for the Debtor to comply with § 521 or § 362(h).").

In this case, the Debtor filed her Statement of Intention within 30 days of the petition date -- checking the box indicating she wished to reaffirm the Vantage debt. By filing the Statement within 30 days of her petition date, the Debtor complied with the requirements of §§ 521(a)(2)(A) and 362(h)(1)(A). The Debtor's first meeting of creditors was held on May 8, 2007. By executing and filing the Reaffirmation Agreement with the court prior to that meeting, the Debtor complied with the requirements of §§ 521(a)(2)(B) and 362(h)(1)(B). Accordingly, the Nissan remains property of the estate and the automatic stay remains in effect until the Debtor receives her discharge. See 11 U.S.C. § 362(c)(2)(C).

Once the discharge is granted, because the Debtor has complied with § 521(a)(2), Vantage may not repossess the Nissan as long as the Debtor is current on her payments and insurance obligations.[10] See Parker, 139 F.3d at 673; see also Blakeley, 2007 WL 674712, at *6 (BAPCPA has not entirely eliminated the possibility of ride-through; "where a debtor timely complies with all requirements under §§ 521 and 362(h), the debtor can 'ride through' the bankruptcy notwithstanding a bankruptcy court's refusal to approve the reaffirmation agreement.").

The holding in this case disagrees with a number of courts which have found that BAPCPA completely eliminated ride-through. See, e.g., In re Ertha Rice, 2007 WL 781893, at *6 (Bankr. E.D. Pa. March 12, 2007) (post-BAPCPA § 362(h) eliminates ride-through); In re Rowe, 342 B.R. 341, 351 (Bankr. D. Kan. 2006) (by amending §§ 521

---

[10] The result would be the same if § 521(a)(6) applied to the Debtor. Section 521(a)(6)(A) requires that a debtor enter into a reaffirmation agreement -- not that the reaffirmation agreement be approved by the court.

9

and 362, the "fourth option" was eliminated). However, BAPCPA's amendments did not eliminate ride-through in every instance; the amendments only eliminated ride-through for debtors who do not comply with §§ 521(a)(2) or (a)(6). If Congress had intended to completely eliminate ride-through, it could have done so by making §§ 362(h)(1) and 521(a)(6) apply if a reaffirmation agreement is disapproved by the court. See Blakeley, 2007 WL 674712, at *6 ("Had Congress intended for a debtor to obtain court approval of a reaffirmation agreement as a requirement under § 521(a)(6), it could have easily done so by simply omitting the words 'enters into an' . . . and substituting the words 'obtains court approval of an'.").

The language of § 521(a)(2)(A) is identical to the language of prior § 521(2)(A), which the Parker court found to be unambiguous. 139 F.3d at 673. Parker also found the following language of § 521(2)(C) (now §521(a)(2)(C)) to be unambiguous: "[N]othing in subparagraph [ ] (A) . . . shall alter the debtor's or the trustee's rights with regard to such property under this title."

BAPCPA added the following to the end of subparagraph (C): "except as provided under 362(h)." However, as explained earlier in this decision, § 362(h) does not apply to debtors, like Ms. Moustafi, who have timely complied with the requirements of §§ 521(a)(2)(A) and (B). Consequently, when § 362(h) does not apply, § 521(a)(2)(C) has the same effect as it did under Parker: "The debtor's other options remain available, as unambiguously stated in § 521[a](2)(C). . . ." 139 F.3d at 673. There is no reason for this court to reach beyond the plain language of the statute to implement some presumed Congressional intent to completely eliminate ride-through when the

unambiguous language of §§ 521(a)(2) and (a)(6) limit BAPCPA's anti-ride-through provision to debtors who fall within the purview of §§ 362(h) and 521(d).

## VI. CONCLUSION

The Reaffirmation Agreement is not in the Debtor's best interest and, therefore, will not be approved. Because the Debtor does not fall within the provisions of § 362(h) or § 521(d), she may retain the Nissan as long as she is current on her payments and insurance obligations. A separate order will be entered this date specifying the rights of the Debtor and the creditor with respect to the Nissan.

Dated this 4th day of June, 2007.

Eileen W. Hollowell
U.S. Bankruptcy Judge

Copy of the foregoing mailed
this 4th day of June, 2007, to:

Antoinette L. Moustafi
6010 South Randall Blvd., Unit 19
Tucson AZ 85706-5601

Howard A. Chorost, Esq.
21 East Speedway Blvd.
Tucson, AZ 85705-7714
Attorney for Vantage West Credit Union

Gayle Eskay Mills
Chapter 7 Trustee
P.O. Box 36317
Tucson, AZ 85740

11

| | |
|---|---|
| 1 | Dennis Clancy, Esq. |
| 2 | Friend of the Court |
|   | Raven, Awerkamp & Clancy, P.C. |
| 3 | 313 South Convent Avenue |
|   | Tucson, AZ 85701-2267 |
| 4 | |
| 5 | Office of the U.S. Trustee |
|   | 230 North First Ave., Suite 204 |
| 6 | Phoenix, AZ 85003 |
| 7 | By _____ |
|   | Judicial Assistant |

12